*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* VANBUREN, Minors.

UNPUBLISHED
July 15, 2026
11:50 AM

No. 375433
Ingham Circuit Court
Family Division
LC No. 24-000460-NA;
24-000461-NA; 24-000462-NA

Before: RICK, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order terminating her parental rights to her three minor children under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (no reasonable likelihood that the conditions will be rectified within a reasonable time), and (g) (failure to provide proper care or custody). We affirm.

## I. FACTUAL BACKGROUND

This case began after petitioner, the Department of Health and Human Services (DHHS), filed a petition alleging that mother and her partner[1] were using methamphetamine in the children's presence. DHHS also alleged that the family lacked stable housing and the children had not attended school for approximately two years. The children were removed from mother's care in April 2024. Mother later pleaded to the trial court's jurisdiction. The conditions leading to adjudication were identified as mother's substance abuse, lack of suitable housing, and failure to ensure that the children received an education.

The trial court ordered mother to comply with a case service plan (CSP). The CSP required mother to complete a psychological evaluation, submit to random drug screens, participate in parenting classes, and engage in substance-abuse services. Mother did well during supervised

---

[1] The children's legal father is deceased.

parenting time, and the record consistently reflected that she loved the children and shared a strong bond with them. But the record also reflected that mother made little progress on the barriers that brought the children into care.

At an August 2024 dispositional review hearing, the children's foster care worker testified that the children were doing well in placement, were preparing to return to school, and were receiving appropriate medical and dental care. Mother, by contrast, had completed only one drug screen for DHHS during the reporting period. That screen was positive for marijuana, cocaine, and fentanyl. Mother also remained without stable housing, declined additional substance-abuse services because she was receiving methadone through a clinic, and had not successfully engaged in a substance-use disorder family support program.

At a November 2024 permanency planning hearing, mother had begun taking some positive steps. She had completed an intake through Community Mental Health, agreed to attend a recovery meeting, and participated in an observation for recovery court. But she continued to test positive for controlled substances, including fentanyl and cocaine, and she remained homeless. Meanwhile, the children were attending school and receiving services to address the educational and developmental effects of their prolonged absence from school. The trial court did not change the permanency goal at that hearing, but it warned mother that a continued lack of progress could lead to a goal change at the next hearing.

At a permanency planning hearing held in February 2025, the evidence showed that mother had not followed through. She remained homeless. She also continued to miss or fail drug screens, and had not engaged in the substance-use disorder family support program, treatment court, or therapy through Community Mental Health. The children, meanwhile, had moved to a new foster placement and were adjusting well. The trial court changed the permanency goal to adoption and ordered DHHS to initiate termination proceedings.

At the termination hearing, mother testified that she had relapsed on heroin and had used drugs three days earlier. She also testified that she intended to begin a 28-day inpatient rehabilitation program the day after the hearing and hoped to move to a halfway house afterward. Mother remained homeless, although she was on a waitlist for housing. The children's foster care worker testified that mother was bonded with the children, but that her substance abuse, lack of housing, and mental-health barriers remained unresolved. The worker also testified that termination was in each child's best interests. The children's foster placement was not preadoptive, but the placement was meeting the children's needs.

The trial court found clear and convincing evidence supporting termination under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (g). The trial court also found that termination was in the children's best interests. The court acknowledged the strong bond between mother and the children, but found that the children needed permanency, stability, and finality that mother could not provide because she remained unhoused and continued to struggle with substance abuse. This appeal followed.

II. ANALYSIS

A. INITIATION OF TERMINATION PROCEEDINGS

-2-

Mother first argues that the trial court prematurely ordered DHHS to initiate termination proceedings. We disagree.

A respondent preserves an issue by raising it before the trial court. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Mother raised no objection to the trial court's order for DHHS to initiate termination proceedings before the trial court. Thus, the issue of whether the trial court improperly ordered DHHS to begin termination proceedings is unpreserved. We review unpreserved issues for plain error. *Id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. at 9. To the extent that this issue also involves interpretation of a statute, this Court reviews such matters de novo. *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019).

MCL 712A.19a governs permanency planning hearings during child protective proceedings. It states, in relevant part, as follows:

> (1) Subject to subsection (2), if a child remains in foster care and parental rights to the child have not been terminated, the court shall conduct a permanency planning hearing within 12 months after the child was removed from his or her home. Subsequent permanency planning hearings must be held no later than every 12 months after each preceding permanency planning hearing during the continuation of foster care.
>
> * * *
>
> (3) A permanency planning hearing must be conducted to review the child's status and the progress being made toward the child's return home or to show why the child should not be placed in the permanent custody of the court.
>
> * * *
>
> (4) At or before each permanency planning hearing, the court shall determine whether the agency has made reasonable efforts to finalize the permanency plan. At the hearing, the court shall determine whether and, if applicable, when the following must occur:
>
> * * *
>
> (b) A petition to terminate parental rights should be filed.
>
> * * *
>
> (8) If the court determines at a permanency planning hearing that a child should not be returned to his or her parent, the court may order the agency to initiate proceedings to terminate parental rights. Except as otherwise provided in this subsection, if the child has been in foster care under the responsibility of the state

-3-

for 15 of the most recent 22 months, the court shall order the agency to initiate proceedings to terminate parental rights. [MCL 712A.19a(1), (3), (4)(b), and (8).]

Mother's argument rests largely on the fact that the children had been in care for only 10 months when the trial court ordered DHHS to file a termination petition. But MCL 712A.19a(8) does not prohibit a trial court from ordering the initiation of termination proceedings before a child has been in foster care for 15 of the most recent 22 months. Rather, the statute provides that the court may order the agency to initiate termination proceedings if it concludes that a child should not be returned to the parent. See MCL 712A.19a(8). The 15-of-22-month provision addresses when the court generally must order the initiation of termination proceedings. It does not restrict the court's authority to do so earlier when the record supports that decision.

The statute also provides guidance on what the trial court should consider when determining whether to initiate termination proceedings:

> (14) In making the determinations under this section, the court shall consider any written or oral information concerning the child from the child's parent, guardian, custodian, foster parent, child caring institution, relative with whom the child is placed, or guardian ad litem in addition to any other evidence, including the appropriateness of parenting time, offered at the hearing. [MCL 712A.19a(14).]

The trial court did not plainly err by ordering DHHS to initiate termination proceedings. Mother was warned at the November 2024 permanency planning hearing that the court would consider changing the goal from reunification to termination if she did not make progress with adhering to her CSP. By February 2025, mother had no housing. She continued to miss or fail drug screens, and had not meaningfully engaged in the treatment and mental-health services offered to her. Her positive parenting time and bond with the children were important considerations, but the fact remained that mother failed to resolve the conditions preventing the children from safely returning to her care. The trial court acted within its statutory authority, and mother has not shown plain error affecting her substantial rights.

## B. BEST INTERESTS

Mother next argues that the trial court clearly erred by finding that termination was in the children's best interests. She contends that the trial court failed to properly weigh her bond with the children, her appropriate parenting time, the children's lack of distress in care, the absence of a preadoptive placement, and the possibility of preserving the parent-child relationship. We disagree.

This Court "review[s] for clear error a trial court's factual finding that termination of a parent's parental rights is in the child's best interests." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). This Court also reviews for clear error a trial court's finding that there are one or more statutory grounds to terminate a respondent's parental rights. *Id*. at 343. "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. at 338 (quotation marks and citation omitted).

-4-

"Whether termination of parental rights is in the best interest of the child must be prove[n] by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The focus of the best-interests analysis is on the child rather than the parent. *In re Mota*, 334 Mich App 300, 321; 964 NW2d 881 (2020). The following is a nonexhaustive list of the factors a court may consider when deciding whether terminating parental rights is in a child's best interest:

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*In re Atchley*, 341 Mich App at 346-347 (quotation marks and citation omitted).]

When more than one child is involved, a trial court must separately consider the best interests of each child. *In re Olive/Metts*, 297 Mich App at 42. Although "in most cases it will be in the best interests of each child to keep brothers and sisters together, if keeping the children together is contrary to the best interests of an individual child, the best interests of that child will control." *Id.* (quotation marks, ellipses, and citation omitted). A trial court need not, however, make "individual" or "redundant factual findings" if the children's interests do not significantly differ. *In re White*, 303 Mich App 701, 715-716; 846 NW2d 61 (2014).

The trial court did not clearly err. It acknowledged what the record made clear: mother loved the children, the children were bonded with her, and mother generally parented appropriately during supervised visits. Those facts weighed against termination. But the court was not required to find that the bond outweighed the children's need for safety and stability. Mother remained unable to provide housing, had not achieved sobriety, and had not meaningfully participated in the services directed at removing those barriers to reunification. The children had already spent approximately one year in care after experiencing homelessness, parental substance abuse, and a two-year absence from school. During that time, foster care provided the stability, schooling, medical care, dental care, and specialized services that mother had not been able to provide.

Mother emphasizes that she was scheduled to begin inpatient treatment the day after the termination hearing. That plan was commendable, but it did not make the trial court's best-interests finding clearly erroneous. Mother had not yet entered treatment. She used heroin three days before the hearing. Mother continued to lack stable housing. The trial court was not required to delay permanency on the basis of hoped-for future progress after months in which mother did not make meaningful efforts to rectify the conditions that brought the children into care.

Nor did the trial court clearly err by considering mother's unresolved barriers in its best-interests analysis. Mother argues that the court focused too heavily on her deficiencies rather than the children. But those deficiencies mattered because they directly affected the children's need for a safe, stable, and drug-free home. The court's analysis was tied to the children's needs for permanency, stability, food, shelter, clothing, medical care, and finality. Thus, the court's best-interest analysis was correctly focused on what would be best for the children. See *In re Mota*, 334 Mich App at 321.

Mother also argues that the trial court failed to make individualized best-interests findings. The foster care worker testified regarding each child, and the trial court terminated mother's parental rights to each child. Mother identifies no materially different circumstance among the children that would have required separate factual findings. The children shared the same parent, the same barriers to reunification, the same need for stable housing, and the same need for a drug-free caregiver. Their interests did not significantly differ, and the trial court was not required to repeat the same findings three times.

Finally, the fact that the children were not in a preadoptive foster care placement did not preclude termination. The lack of a preadoptive foster care placement was a relevant consideration, but it did not overcome the evidence that mother could not provide the children with permanency and stability within a reasonable time. Likewise, the fact that the children were doing well in foster care did not mean that they should be required to wait indefinitely for mother to resolve longstanding barriers to reunification. On this record, we are not left with a definite and firm conviction that the trial court made a mistake.

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Stephen L. Borrello